**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JENNIFER HARRIGAN,<br><br>Plaintiff,<br><br>vs.<br><br>OUTFRONT MEDIA INC.,<br><br>Defendant. | Civil Action No. 18-cv-4113<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff, by and through her attorneys, The Law Offices of Christopher Q. Davis, PLLC, alleges, upon personal knowledge and upon information and belief as to other matters, as follows:

## NATURE OF ACTION

1. Plaintiff Jennifer Harrigan ("Ms. Harrigan" or "Plaintiff") brings this action against Defendant OUTFRONT Media Inc, for declaratory and monetary relief and damages for injuries Plaintiff has sustained as a result of Defendant's unlawful employment discrimination against her based on a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), as amended by the ADA Amenments Act of 2008 ("ADAA"), New York State Human Rights Law, N.Y. Executive Law § 290 *et seq*. ("NYSHRL") and New York City Human Rights Law (NYCHRL) Admin. Code §§ 8-101 *et seq*.

## PARTIES

2. Plaintiff Jennifer Harrigan was a former Senior Production Manager previously employed in Defendant OUTFRONT Media Inc.'s ("Defendant", "OUTFRONT" or "the Company") New York City office. At all relevant times, Plaintiff resides in Nyack, New York.

3. At all relevant times Plaintiff was an "employee" of Defendant within the

meaning of all applicable statutes.

4. OUTFRONT Media Inc. is incorporated under the laws of the state of Maryland and is registered to do business in the State of New York, with a principal place of business at 405 Lexington Avenue, New York, New York.

5. At all relevant times, Defendant met the definition of Plaintiff's "employer" under all applicable statutes.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because the violations which give rise to Plaintiff's claims occurred in this District.

9. Defendant is subject to personal jurisdiction in New York because they maintain corporate headquarters in New York City.

## PROCEDURAL REQUIREMENTS

10. Ms. Harrigan filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about March 29, 2018, well within 300 days of the discriminatory termination.

11. Ms. Harrigan received a Dismissal and Notice of Right to Sue from the EEOC, dated April 12, 2018, and less than ninety (90) days has elapsed between the filing of this Complaint and Ms. Harrigan's receipt of the Right to Sue Letter from the EEOC.

12. Following the commencement of this action, a copy of this Complaint will be served on the New York City Commission on Human Rights and the Office of Corporation Counsel of the City of New York, thereby satisfying the notice requirement of §8-502 of the New York City Administrative Code.

## FACTUAL ALLEGATIONS

13. Plaintiff was employed by Defendant from March 2014 through November 15, 2017, first as a Production Services Coordinator; she was then promoted to Supervisor followed by Senior Production Manager.

14. Defendant is one of the largest out-of-home media companies in North America specializing in mainly out of home advertising, marketing, and maintaining a connected, data enabled network of over 400,000 billboard, transit and digital displays, with a mobile and social overlay. This scale provides an integrated and targeted platform to connect brand advertisers with the right audience.

15. Ms. Harrigan was responsible for "assisting and supporting the Transit/Displays Production Services Department" of the Company, as outlined in her job description.

16. Specifically, this required that she manage production orders from the price quote stage to final billing, all of which occurred post-sale and post-content.

17. To accomplish this, she worked with vendors and clients about art, production specifics, and delivery instructions for all production orders.

18. Ms. Harrigan also calculated price quotes, managed production timelines, coordinated project budgets, vetted outside vendors, and sent proofs to clients and sales staff before materials were printed, communicating with multiple parties as necessary via phone and/or e-mail.

19. Most, if not all, of Plaintiff's collaborative workload was conducted over phone and/or e-mail in order to maintain documentary records of all price quotes and project orders to protect the Company.

20. In fact, Plaintiff's job required her to communicate and work directly with members of the sales staff from many of the Company's offices across the country; specifically, she was directly responsible for orders placed by the sales team in both New York, New York as well as Miami, Florida.

21. Approximately fifteen percent (15%) of Ms. Harrigan's workload was with sales representatives located in the Miami office, but she was never required to travel to conduct such business.

22. Ms. Harrigan's duties rarely ***required*** her presence in the office – all central aspects of her work can and were completed via phone and e-mail.

23. In fact, everything she did ***needed*** to be done via e-mail to maintain a paper trail.

24. Besides her regular work responsibilities described above, only a few instances demanded Ms. Harrigan's physical presence: (1) special projects that required on-site visits and field surveys, and (2) attendance at Metropolitan Transit Authority ("MTA") training sessions, both of which only occurred once or twice a year, at most.

**Plaintiff's Disability**

25. On or about September 2016 last year, Ms. Harrigan began to suffer from unpredictable and frequent episodes of extreme vertigo.

26. Accompanying symptoms of nausea, motion sensitivity, dizziness, and loss of balance exacerbated her episodes.

27. During these instances, Ms. Harrigan was unable to complete simple daily tasks,

could not maintain her balance, and was experiencing debilitating dizziness.

28. Ms. Harrigan's condition continued to worsen as she experienced these intermittent episodes.

29. As a result, around mid- to late-March, Ms. Harrigan requested permission from her supervisor, Ms. Heather Thompson, to work from home.

30. Ms. Thompson approved of this arrangement for as long as Ms. Harrigan was experiencing these symptoms.

31. Late in May 2017, Ms. Harrigan visited an Ear, Nose and Throat ("ENT") doctor who officially diagnosed her with vestibular dysregulation or vestibular migraines (also known as migraines associated with vertigo or MAV).

32. She was then referred to a neurologist, Dr. Shital Shah, and a physical therapist for further medical evaluation and treatment.

33. Ms. Harrigan began taking medication for her vestibular migraines, which she continues to take to decrease the frequency and ameliorate the debilitating symptoms of her neurological episodes.

34. Ms. Harrigan's condition substantially limited her in the performance of one or more major life activities, including but not limited to her ability safely commute to and from work.

35. In fact, Ms. Harrigan's condition made commuting to work, almost an hour and a half each way, difficult, frightening, and ultimately against medical advice.

36. Specifically, since Ms. Harrigan's diagnosis, at her doctor's recommendations, she has entirely avoided both driving and using public transportation for extended periods of time.

37. Driving is especially hazardous for Ms. Harrigan because her vestibular migraines occur without warning and can last for a few hours.

38. Ms. Harrigan's diability and resulting limitiations did not prevent her from remotely performing the essential functions of her position with Defendant.

39. Specifically, Ms. Harrigan was perfectly capable of placing orders, providing price quotes, reviewing electronic and/or hardcopy proofs, and engaging with sales staff in New York and Miami, Florida – the two offices she was responsible for – via phone and email.

**Defendant's Refusal To Provide A Reasonable Accomodation And Termination of Plaintiff**

40. On May 18, 2017, following instructions from Ms. Valerie Sadler, Senior Director of Human Resources at the Company, Ms. Harrigan submitted an official request for a medical leave of absence spanning eight weeks.

41. At this time, Ms. Harrigan also began the process of applying for disability benefits through the Company's third-party claims administrator, Hartford.

42. The Company granted Ms. Harrigan's request for leave of absence through July 13, 2017.

43. On June 30, 2017 Ms. Harrigan received an approved extension of her medical leave of absence and short-term disability benefits through August 14, 2017, with a return to work date of August 15, 2017.

44. Subsequently, on July 31, 2017, Ms. Harrigan went to see Dr. Shah because she was again experiencing an increase in the frequency of her episodes and unpleasant side effects from her medications.

45. At the conclusion of her appointment, Dr. Shah recommended an extension of Ms. Harrigan's medical leave, which was subsequently approved through August 29, 2017, with

a return to work date of August 30, 2017.

46. In preparation of Ms. Harrigan's return, on August 25, 2017, Ms. Sadler sent her an e-mail with instructions to bring a "doctor's note releasing [her] back to work . . . . ***be it full-time or intermittently***." (emphasis added).

47. Ms. Sadler also included in her instructions that Ms. Harrigan's doctor's note should detail "any accommodations and/or restrictions [she] needs" upon her return to work

48. On August 28, 2017 Ms. Harrigan obtained a note from Dr. Shah, who recommended three reasonable accommodations that would enable Ms. Harrigan to return to work on August 30, 2017 and perform the essential functions of her job.

49. Specifically, Dr. Shah requested that Ms. Harrigan be allowed to: (1)"return to work part time (8:30-12:30) for 4 weeks then to work full time thereafter", (2) "work remotely from home in the near future, traveling to company headquarters only on a necessary basis," and (3) "[w]hen [Ms. Harrigan] has migraines/episodes she will put on her out of office notice and resume work as soon as she is able (and after taking her medications, this usually takes a couple to a few hours at most)."

50. On August 28, 2017, the Company denied Ms. Harrigan's first requested accommodation (*i.e.* part-time work) but seemingly did not disapprove of the second and third accommodations.

51. Ms. Sadler's sparse e-mail responding to Ms. Harrigan's request, the Company purported to "not be able to support the outlined restrictions as the job responsibilities require [Ms. Harrigan] to take it on from start to finish and during standard business hours."

52. Based on this e-mail, Ms. Harrigan assumed the Company's main contention was the request to work only part-time for the first four (4) weeks.

53. In response, Ms. Harrigan explained to Ms. Sadler that she had previously worked from home from March through May before being officially diagnosed with vestibular migraines without any issues.

54. Notably, in March 2017 – while Ms. Harrigan was working remotely as an initial accommodation for her disability before her official diagnosis, but prior to starting short-term disability – she received an 11.25% merit-based raise and was promoted to the Senior Production Manager role because of her strong work and dedication to the Company.

55. During a phone conversation and in her initial email, Ms. Sadler alluded to Ms. Harrigan, the fact that she would be allowed to return to work "intermittently" (*i.e.* part-time) initially.

56. However, the Company continued to simply reiterate its initial denial of Ms. Harrigan's requested part-time schedule accommodation, indicating that her job was "'never part-time' but rather [she] took time off when not feeling well."

57. Because she was not medically cleared to return to work full-time and certainly not without an accommodation of remote work, Ms. Harrigan again requested and received an extension of her short-term disability.

58. At that time, her leave was approved through September 17, 2017 with her date of return scheduled for September 18, 2017.

59. In preparation for her anticipated return, Ms. Harrigan visited Dr. Shah on September 13, 2017 in hopes that she would be cleared to return to work.

60. Due to the severity of her condition and frequency of her episodes at that time, Dr. Shah was not able to authorize her return to work.

61. Ms. Harrigan thus filed another extension of her short-term disability through

October 1, 2017 with a return-to-work date of October 2, 2017.

62. At this point, Dr. Shah submitted documentation to Hartford detailing only one accommodation request for Ms. Harrigan's return date: that she be allowed to "work from home permanently."

63. Hartford confirmed to Ms. Harrigan that they received this documentation on September 14, 2017.

64. After some initial confusion and missed communications between the Company and Hartford about Ms. Harrigan's new return to work date of October 2, 2017 with the accommodation of working from home, on September 28, 2017, Ms. Harrigan learned from Ms. Keesha Reyes at Hartford that her requested accommodation to work from home had been denied by Defendants.

65. After learning this, Ms. Harrigan immediately reached out to Ms. Sadler, expressing her confusion at the sudden change in the Company's view that working from home was *per se* an unreasonable accommodation.

66. Ms. Harrigan explained that her initial three-part request for accommodations on August 28, 2017 had clearly included a request to work from home that was never expressly disapproved by the Company at that time

67. The next day Ms. Sadler responded to Ms. Harrigan via e-mail, explaining that "it was always understood that accommodating a work from home situation was temporary and the understanding being that [Ms. Harrigan] would return to the office to work."

68. Ms. Sadler also stated that the Company "concluded that the Production role is a critical part of the business" because it "require[s] day-to-day and face-to-face interactions with [the Company's] sales organization."

69. This was the first time anyone had ever expressed to Ms. Harrigan that her role "required" face-time in the office with the sales team.

70. The Company indicated that Ms. Harrigan's previous arrangement of working from home from March to May "was not conducive for the business."

71. This was particularly surprising given the promotion and raise she had received while she was working from home.

72. Moreover, she wasn't required to put in "face time" with the sales department in Florida whom she was also responsible for servicing.

73. On October 9, 2017, Ms. Harrigan informed Ms. Sadler that she was unable to return to work without a reasonable accommodation.

74. Ms. Harrigan submitted additional paperwork to Hartford and the Company, substantiating why she cannot commute to work and the dangers posed by her medical condition.

75. In her e-mail to Ms. Sadler, Ms. Harrigan attempted to continue to engage in the interactive process to determine a reasonable accommodation and as such inquired as to other options that the Company could provide.

76. On November 6, 2017, without any engagement as to other accomdoations, Ms. Sadler informed Ms. Harrigan that "if [she] did not return by November 15, [her] employment will be terminated as of that date."

77. Ms. Sadler explained to Ms. Harrigan that the Company could not "support a permanent work from home situation."

78. In response, Ms. Harrigan made clear that she had no intentions of resigning from her position and can return to work ***with an accommodation*** on November 15, 2017.

79. Ms. Harrigan clarified to the Company that her work-from-home request is

"intended to last only as long as necessary to accommodate the current symptoms of [her] disability," and was thus not truly permanent.

80. Nevertheless, the Company refused to allow any accommodations for Ms. Harrigan's medical disability.

81. At all relevant times, Ms. Harrigan diligently informed Ms. Sadler and the Company of her health, the status of her disability benefits, and her medical needs.

82. Ms. Harrigan frequently followed up with her claims handler at Hartford, with Ms. Sadler in the Company's Human Resources Department, as well as with her direct supervisors.

83. Ms. Harrigan repeatedly asked the Company to explore other options for accommodations via emails on September 29, 2017, October 9, 2017, and October 17, 2017.

84. Ms. Harrigan also indicated her willingness to "re-submit [her] requested accommodation along with any necessary medical documentation and to re-engage in the interactive process."

85. Despite this, the Defendant utterly ignored their legal obligations to engage in an interactive process to determine a reasonable accommodation and instead officially terminated Ms. Harrigan from her position on November 15, 2017 via e-mail and UPS.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Disability Discrimination Under the ADA – Failure to Accomodate)**

86. Plaintiff hereby repeats and re-alleges each and every one of the above referenced allegation as if fully setforth herein.

87. At all relevant times, Plaintiff was an "employee" of the Defendant under the ADA, 42 U.S.C. § 12111(4).

88. At all relevant times, Defendant is an "employer" under the ADA, 42 U.S.C. §

12111(5).

89. Plaintiff is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the ADA; or, in the alternative, Defendant regarded or perceived Plaintiff as suffering from a physical or mental impairment that rendered her disabled within the meaning of the ADA.

90. Plaintiff is, and has been at all relevant times, otherwise qualified for her position with Defendant; she was, and is, able to perform the essential functions of the position with a reasonable accommodation.

91. At all relevant times, Ms. Harrigan requested accommodations for her medical disability that are reasonable within the meaning of the law. Reasonable accommodations under the ADA may include "part-time or modified work schedules." 45 C.F.R. § 84.12. Reasonable accomodations under the ADA may include telecomuting. *See Mosby-Meachem v. Memphis Light, Gas & Water Division,* No. 17-5483 (6th Cir. 2018).

92. Plaintiff also has a record of the illness described in the preceeding paragraphs, and Defendants perceived Ms. Harrigan has disabled.

93. Defendant was aware of Plaintiff's medical condition.

94. Defendant failed to accommodate Plaintiff's disability by terminating her employment because of her disability, her record of disability, and/or because of Defendant's perception that Plaintiff was disabled.

95. As a direct and proximate result of the Defendant's discriminatory acts, Plaintiff suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

96. Since Defendant engaged in their discriminatory practices with malice or with reckless disregard for Plaintiff's federally protected rights, Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Disability Discrimination Under the ADA – Discriminatory Termination)**

97. Plaintiff hereby repeats and re-alleges each and every one of the above referenced allegation as if fully set forth herein.

98. At all relevant times, Plaintiff was an "employee" of the Defendant under the ADA, 42 U.S.C. § 12111(4).

99. At all relevant times, Defendant is an "employer" under the ADA, 42 U.S.C. § 12111(5).

100. Plaintiff is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the ADA; or, in the alternative, Defendant regarded or perceived Plaintiff as suffering from a physical or mental impairment that rendered her disabled within the meaning of the ADA.

101. Plaintiff is, and has been at all relevant times, otherwise qualified for her position with Defendant; she was, and is, able to perform the essential functions of the position with a reasonable accommodation.

102. Defandant discriminated against Plaintiff by terminating her employment because of her disability, her record of disability, and/or because of Defendant's perception that Plaintiff was disabled.

103. By engaging in such discrimination, Defendant violated the ADA.

104. As a direct and proximate result of the Defendant's discriminatory acts, Plaintiff suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of

future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

105. Since Defendant engaged in their discriminatory practices with malice or with reckless disregard for Plaintiff's federally protected rights, Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(Disability Discrimination Under the ADA – Failure to Engage in Interactive Process)**

106. Plaintiff hereby repeats and re-alleges each and every one of the above referenced allegation as if fully set forth herein.

107. At all relevant times, Plaintiff was an "employee" of the Defendant under the ADA, 42 U.S.C. § 12111(4).

108. At all relevant times, Defendant is an "employer" under the ADA, 42 U.S.C. § 12111(5).

109. Plaintiff is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the ADA; or, in the alternative, Defendant regarded or perceived Plaintiff as suffering from a physical or mental impairment that rendered her disabled within the meaning of the ADA.

110. Plaintiff is, and has been at all relevant times, otherwise qualified for her position with Defendant; she was, and is, able to perform the essential functions of the position with a reasonable accommodation.

111. Plaintiff also has a record of the illness described in the preceeding paragraphs, and Defendants perceived Ms. Harrigan has disabled.

112. Defendant was aware of Plaintiff's disability.

113. At all relevant times, Ms. Harrigan requested accommodations for her medical

disability that are reasonable within the meaning of the law.

114. Defendant failed to engage the interactive process, whether formal or informal, to explore options, brainstorm about ideas, learn more about Plaintiff's requests for an accomodation.

115. Rather than engaging in the interactive process to determine a reasonable accommodation, the Defendant terminated Ms. Harrigan's position on November 15, 2017.

116. Ms. Harrigan repeatedly asked to explore other options with the Company, namely on September 29, October 9, and October 17, all of which were ignored.

117. Ms. Harrigan indicated her willingness to "re-submit [her] requested accommodation along with any necessary medical documentation and to re-engage in the interactive process" but Defendant refused to engage.

118. The Defendant has utterly failed to engage in an interactive process, as required by the ADA.

119. As a direct and proximate result of the Defendant's discriminatory acts, Plaintiff suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

120. Since Defendant engaged in their discriminatory practices with malice or with reckless disregard for Plaintiff's federally protected rights, Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Disability Discrimination Under the NYSHRL – Failure to Accomodate)**

121. Plaintiff hereby repeats and re-alleges each and every one of the above referenced allegation as if fully set forth herein.

122. At all relevant times, Plaintiff was an "employee" of the Defendant under the NYSHRL.

123. At all relevant times, Defendant is an "employer" under the NYSHRL

124. Plaintiff is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the NYSHRL; or, in the alternative, Defendant regarded or perceived Plaintiff as suffering from a physical or mental impairment that rendered her disabled within the meaning of the NYSHRL.

125. Plaintiff is, and has been at all relevant times, otherwise qualified for her position with Defendant; she was, and is, able to perform the essential functions of the position with a reasonable accommodation.

126. Plaintiff also has a record of the illness described in the preceeding paragraphs, and Defendants perceived Ms. Harrigan has disabled.

127. Defendant was aware of Plaintiff's disability.

128. At all relevant times, Plaintiff requested accommodations for her medical disability that are reasonable within the meaning of the law.

129. Defendant failed to accommodate Plaintiff's disability by terminating her employment because of her disability, her record of disability, and/or because of Defendant's perception that Plaintiff was disabled.

130. As a direct and proximate result of the Defendant's discriminatory acts, Plaintiff suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

131. Since Defendant engaged in their discriminatory practices with malice or with

reckless disregard for Plaintiff's federally protected rights, Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

## **FIFTH CAUSE OF ACTION**
## (Disability Discrimination Under the NYSHRL – Discriminatory Termination)

132. Plaintiff hereby repeats and re-alleges each and every one of the above referenced allegation as if fully set forth herein.

133. At all relevant times, Plaintiff was an "employee" of the Defendant under the NYSHRL.

134. At all relevant times, Defendant is an "employer" under the NYSHRL.

135. Plaintiff is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the NYSHRL; or, in the alternative, Defendant regarded or perceived Plaintiff as suffering from a physical or mental impairment that rendered her disabled within the meaning of the NYSHRL.

136. Plaintiff is, and has been at all relevant times, otherwise qualified for her position with Defendant; she was, and is, able to perform the essential functions of the position with a reasonable accommodation.

137. Defandant discriminated against Plaintiff by terminating her employment because of her disability, her record of disability, and/or because of Defendant's perception that Plaintiff was disabled.

138. By engaging in such discrimination, Defendant violated the NYSHRL.

139. As a direct and proximate result of the Defendant's discriminatory acts, Plaintiff suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

140. Since Defendant engaged in their discriminatory practices with malice or with reckless disregard for Plaintiff's federally protected rights, Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**(Disability Discrimination Under the NYSHRL – Failure to Engage in Interactive Process)**

141. Plaintiff hereby repeats and re-alleges each and every one of the above referenced allegation as if fully set forth herein.

142. At all relevant times, Plaintiff was an "employee" of the Defendant under the NYSHRL.

143. At all relevant times, Defendant is an "employer" under the NYSHRL.

144. Plaintiff is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the NYSHRL; or, in the alternative, Defendant regarded or perceived Plaintiff as suffering from a physical or mental impairment that rendered her disabled within the meaning of the NYSHRL.

145. Plaintiff is, and has been at all relevant times, otherwise qualified for her position with Defendant; she was, and is, able to perform the essential functions of the position with a reasonable accommodation.

146. Plaintiff also has a record of the illness described in the preceeding paragraphs, and Defendants perceived Ms. Harrigan has disabled.

147. Defendant was aware of Plaintiff's disability.

148. At all relevant times, Ms. Harrigan requested accommodations for her medical disability that are reasonable within the meaning of the law.

149. Defendant failed to engage the interactive process, whether formal or informal, to explore options, brainstorm about ideas, learn more about Plaintiff's requests for an

accomodation.

150. Rather than engaging in the interactive process to determine a reasonable accommodation, the Defendant terminated Ms. Harrigan's position on November 15, 2017.

151. Ms. Harrigan repeatedly asked to explore other options with the Company, namely on September 29, October 9, and October 17, all of which were ignored.

152. Ms. Harrigan indicated her willingness to "re-submit [her] requested accommodation along with any necessary medical documentation and to re-engage in the interactive process" but Defendant refused to engage.

153. The Defendant has utterly failed to engage in an interactive process, as required by the NYSHRL.

154. As a direct and proximate result of the Defendant's discriminatory acts, Plaintiff suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

155. Since Defendant engaged in their discriminatory practices with malice or with reckless disregard for Plaintiff's federally protected rights, Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
**(Disability Discrimination Under the NYCHRL – Failure to Accomodate)**

156. Plaintiff hereby repeats and re-alleges each and every one of the above referenced allegation as if fully set forth herein.

157. At all relevant times, Plaintiff was an "employee" of the Defendant under the NYSHRL.

158. At all relevant times, Defendant is an "employer" under the NYCHRL

159. Plaintiff is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the NYCHRL; or, in the alternative, Defendant regarded or perceived Plaintiff as suffering from a physical or mental impairment that rendered her disabled within the meaning of the NYCHRL.

160. Plaintiff is, and has been at all relevant times, otherwise qualified for her position with Defendant; she was, and is, able to perform the essential functions of the position with a reasonable accommodation.

161. Plaintiff also has a record of the illness described in the preceeding paragraphs, and Defendants perceived Ms. Harrigan has disabled.

162. Defendant was aware of Plaintiff's disability.

163. At all relevant times, Plaintiff requested accommodations for her medical disability that are reasonable within the meaning of the law.

164. Defendant failed to accommodate Plaintiff's disability by terminating her employment because of her disability, her record of disability, and/or because of Defendant's perception that Plaintiff was disabled.

165. As a direct and proximate result of the Defendant's discriminatory acts, Plaintiff suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

166. Since Defendant engaged in their discriminatory practices with malice or with reckless disregard for Plaintiff's federally protected rights, Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

**<u>EIGHTH CAUSE OF ACTION</u>**
**(Disability Discrimination Under the NYCHRL – Discriminatory Termination)**

167. Plaintiff hereby repeats and re-alleges each and every one of the above referenced allegation as if fully set forth herein.

168. At all relevant times, Plaintiff was an "employee" of the Defendant under the NYSHRL.

169. At all relevant times, Defendant is an "employer" under the NYCHRL.

170. Plaintiff is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the NYCHRL; or, in the alternative, Defendant regarded or perceived Plaintiff as suffering from a physical or mental impairment that rendered her disabled within the meaning of the NYCHRL.

171. Plaintiff is, and has been at all relevant times, otherwise qualified for her position with Defendant; she was, and is, able to perform the essential functions of the position with a reasonable accommodation.

172. Defandant discriminated against Plaintiff by terminating her employment because of her disability, her record of disability, and/or because of Defendant's perception that Plaintiff was disabled.

173. By engaging in such discrimination, Defendant violated the NYCHRL.

174. As a direct and proximate result of the Defendant's discriminatory acts, Plaintiff suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

175. Since Defendant engaged in their discriminatory practices with malice or with reckless disregard for Plaintiff's federally protected rights, Plaintiff also requests an award of

punitive damages, in an amount to be determined at trial

## <u>NINTH CAUSE OF ACTION</u>
## (Disability Discrimination Under the NYCHRL – Failure to Engage in Interactive Process)

176. Plaintiff hereby repeats and re-alleges each and every one of the above referenced allegation as if fully set forth herein.

177. At all relevant times, Plaintiff was an "employee" of the Defendant under the NYSHRL.

178. At all relevant times, Defendant is an "employer" under the NYSHRL.

179. Plaintiff is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the NYSHRL; or, in the alternative, Defendant regarded or perceived Plaintiff as suffering from a physical or mental impairment that rendered her disabled within the meaning of the NYSHRL.

180. Plaintiff is, and has been at all relevant times, otherwise qualified for her position with Defendant; she was, and is, able to perform the essential functions of the position with a reasonable accommodation.

181. Plaintiff also has a record of the illness described in the preceeding paragraphs, and Defendants perceived Ms. Harrigan has disabled.

182. Defendant was aware of Plaintiff's disability.

183. At all relevant times, Ms. Harrigan requested accommodations for her medical disability that are reasonable within the meaning of the law.

184. Defendant failed to engage the interactive process, whether formal or informal, to explore options, brainstorm about ideas, learn more about Plaintiff's requests for an accomodation.

185. Rather than engaging in the interactive process to determine a reasonable

accommodation, the Defendant terminated Ms. Harrigan's position on November 15, 2017.

186. Ms. Harrigan repeatedly asked to explore other options with the Company, namely on September 29, October 9, and October 17, all of which were ignored.

187. Ms. Harrigan indicated her willingness to "re-submit [her] requested accommodation along with any necessary medical documentation and to re-engage in the interactive process" but Defendant refused to engage.

188. The Defendant has utterly failed to engage in an interactive process, as required by the NYSHRL.

189. As a direct and proximate result of the Defendant's discriminatory acts, Plaintiff suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

190. Since Defendant engaged in their discriminatory practices with malice or with reckless disregard for Plaintiff's federally protected rights, Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment and issue:

(a) An award to Plaintiff for her actual damages in an amount to be determined at trial for lost wages and benefits, including an award of back pay and front pay;

(b) An award to Plaintiff of compensatory damages in an amount to be determined at trial for the future pecuniary loss, reputational harm, humiliation, mental anguish, pain and suffering and emotional distress

sustained by her;

(c) An award of punitive damages to deter future conduct by the Defendant, in an amount to be determined at trial;

(d) An award to Plaintiff of the costs of this action, including reasonable attorneys' fees and expenditures, to the fullest extent permitted by law; and

(e) Such other and further relief as this Court deems necessary and proper.

DATED: May 8, 2018
New York, New York

THE LAW OFFICE OF
CHRISTOPHER Q. DAVIS, PLLC

______________________________
Christopher Q. Davis (CD 7282)
Rachel M. Haskell (RH 8248)
The Law Office of Christopher Q. Davis, PLLC
225 Broadway, Suite 1803
New York, NY 10007
(646) 430-7930
*Attorneys for Plaintiff*